**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

| | |
|---|---|
| Secretary, Vermont Agency of<br>Natural Resources,<br>      Plaintiff,<br><br>          v.<br><br>Robert Deering and Randy Andrews,<br>          Respondents. | Docket No. 170-10-10 Vtec<br>(Administrative Order<br>enforcement proceeding) |

### Amended Decision on the Merits[1]

This matter came before us for hearing after Robert Deering filed a timely request for a hearing and gave notice contesting the October 6, 2010 Administrative Order ( "the Order" or "AO") issued against him and Randy Andrews ("Respondents") by the Secretary of the Vermont Agency of Natural Resources ("ANR"). The Order alleged that Respondents Deering and Andrews directed and conducted alterations of the White River without first obtaining a permit or emergency authorization, in violation of the Vermont Stream Flow Regulations located at chapter 41 of title 10 of the Vermont Statutes Annotated. The Order includes an ANR directive that Respondents pay certain penalties, abide by the applicable Regulations in the future, and complete other remedial measures as ANR may require.

The Court thereafter conducted a merits hearing on May 4, 2011. Respondents appeared[2] at the merits hearing and represented themselves. ANR was represented at the hearing by John Zaikowski, Esq., an ANR staff attorney. At the close of evidence, the Court offered the parties an opportunity to file post-trial memoranda. Based upon the relevant evidence presented at the hearing, the Court renders the following factual and legal determinations, including determinations on ANR's request for imposition of penalties and other relief.

---

[1] This Amended Decision is issued to correct an omission in the prior Decision of September 29, 2011. The only addition to this Amended Decision is the inclusion of the Rights to Appeal notice on page 5, below.

[2] Respondent Andrews appeared at the merits hearing, even though he failed to request a hearing or enter his appearance in this matter prior to trial. The Court nonetheless allowed Respondent Andrews to participate in the hearing.

## Factual Findings

1. Respondent Deering owns property located at 529 Route 100 in the Town of Hancock, Vermont. The Deering property is bounded on the easterly side by the White River.

2. During high water events, Respondent Deering's property floods as the White River breaches its banks in the vicinity of his property. During a significant rainstorm in 2008, the Deering property and some adjoining properties in Hancock were flooded, suffering severe damage and soil erosion.

3. The erosion and other damage caused by this 2008 rainstorm were so significant as to cause Respondent Deering to lose approximately one acre of land. On the land adjoining Respondent Deering's property, where his son occupies a single-family residence, the flood washed away the on-site septic system. Due to the realignment of the White River, the land in which the water supply well was located is now in the White River.

4. In response to the damage to his property in 2008, Respondent Deering obtained a stream flow alteration permit, issued on an emergency basis, to conduct remediation work, including work within the water course of the White River. Because the 2008 rainstorm and the flooding it caused were so significant, the course of the White River had changed in several areas, including in the vicinity of the Deering property.

5. ANR officials worked closely with Respondent Deering in response to the 2008 flooding and erosion of his property and offered guidance as to how he could complete the necessary remediation work and stay within the authority of his emergency permit and the applicable stream flow alteration regulations.

6. In April of 2010, another significant rainstorm occurred and caused the White River to again exceed its banks and cause erosion and other damage to Respondent Deering's property.

7. In response to the erosion and other damage caused by this 2010 rainstorm, Respondent Deering hired Respondent Andrews to complete excavation work to stabilize the westerly bank of the White River. Respondent Andrews, at Respondent Deering's direction, brought excavation equipment onto Deering's property, operated that equipment along and within the reconfigured channel of the White River, and re-established approximately 140 linear feet of the bank and channel of the White River.

To complete this work, Respondent Andrews, again at Respondent Deering's direction, brought approximately 300 cubic yards of stone and earthen fill material onto Deering's property and deposited it along and into the White River.

8.     At no time prior to completing this work did either Respondent contact ANR stream flow officials or obtain a stream flow alteration permit to do this work. Respondents also did not receive any emergency authorization for the work or provide notice of the work to local or ANR officials, as contemplated by 10 V.S.A. § 1021.

9.     On or about April 26, 2010, ANR officials were notified of Respondent Andrews' work along the White River on Respondent Deering's property.  These notifications came from unnamed citizens who were concerned about excavation equipment being operated within the banks of the White River.  On cross examination, Respondent Deering admitted that the work he directed Respondent Andrews to do began on Friday, April 23rd and continued until Monday, April 26, 2010.

10.     Once ANR officials inspected the work being done on Respondent Deering's property, Respondent Andrews immediately stopped; however, he had essentially completed the work that Respondent Deering had directed him to do.

11.     Respondent Deering's prior experience with stream flow alteration/remediation work provided him with knowledge about the applicable regulations and permit processes.

12.     Respondent Andrews is an experienced excavation contractor and knew or should have known about the need to inquire of ANR officials concerning stream flow work.

13.     Respondents' failure to apply for a stream flow alteration permit prevented ANR officials from reviewing their work plans and denied potentially affected parties and town officials the opportunity to review Respondents' work plans, offer suggested changes, and contemplate possible impacts to downstream properties.

14.     The work Respondent Andrews performed in the White River, at Respondent Deering's direction, most likely impacted properties downstream.  The evidence presented in this proceeding does not provide a factual foundation for identifying these specific impacts, but it appears undisputed that these types of unregulated activities pose a risk of negative impacts to downstream properties.

15.     Now that the work Respondents directed and performed has been completed, ANR has determined that Respondents should not be directed or allowed to perform

3

further remediation work, since such work may cause further unnecessary stream flow alterations. We find ANR's assessment credible and adopt it as our factual finding.

**Discussion**

Respondents do not appear to dispute the substantive legal question now before this Court: whether the work that they directed and did required a permit under the applicable statutory provisions (10 V.S.A. §§ 1021 and 1022). Respondents have offered no legal argument to refute ANR's claims. Further, Respondents were aware of the statutory provisions that allow persons to take "emergency preventative measures necessary to preserve life or to prevent severe imminent damage to public or private property," provided they give prior notice to both local and ANR officials. 10 V.S.A. § 1021(b). However, Respondents chose to neither seek a stream flow alteration permit nor give notice for emergency actions. Both Respondents testified at trial and appeared to the Court to be sincere, credible witnesses. However, the testimony they provided lacked any contest with the material allegations presented in the Secretary's Order.

Based upon the evidence presented, we conclude that both Respondents knew their directions and actions violated the Vermont Stream Flow Regulations (title 10, chapter 41 of the Vermont Statutes Annotated) but made a conscious decision to ignore their obligations under those Regulations so that they could complete their work without possible inquiry from local and state officials and potentially affected parties. We find no authorization for Respondents' actions and therefore **AFFIRM** the October 6, 2010 AO issued by the ANR Secretary against Respondents, under the authority conferred on this Court by 10 V.S.A. § 8012(b)(1) and (2).

Pursuant to 10 V.S.A. § 8010(b), ANR also determined and announced an assessment of penalties in its October 6, 2010 AO. Once an AO is challenged before this Court, we have the authority to "affirm, modify or reverse any provision of any [administrative] order." 10 V.S.A. § 8012(b)(3).[3] Based upon the evidence and legal arguments presented, we conclude that the AO must be **AFFIRMED** in its entirety, including the assessment of penalties against Respondent Deering in the amount of

---

[3] One exception noted in 10 V.S.A. § 8012(b)(3) to our authority to "affirm, modify or reverse" an administrative order is that we can only affirm "or vacate and remand" any directives contained therein that are effectively injunctive orders that ANR is authorized to make under 10 V.S.A. § 8008(b)(5). Since our decision here affirms the AO and does not disturb the directives contained therein, this exception is not implicated.

**$5,400.00** and the assessment against Respondent Andrews in the amount of **$3,600.00**.

## Conclusion

For the reasons stated above, we conclude that Respondents Robert Deering and Randy Andrews violated the Vermont Stream Flow Regulations (10 V.S.A. §§ 1021 and 1022) by directing and conducting unpermitted activities between April 23 and 26, 2010 on Respondent Deering's property along the White River and located at 529 Route 100 in the Town of Hancock. We therefore **AFFIRM** the October 6, 2010 AO in its entirety, including the assessment of penalties against Respondent Deering in the amount of **$5,400.00** and the assessment of penalties against Respondent Andrews in the amount of **$3,600.00**.

## Rights of Appeal (10 V.S.A. §§ 8012(c)(4) and (5))

**WARNING:** This Decision and the accompanying Judgment Order will become final if no appeal is requested within 10 days of the date this Decision is received. All parties to this proceeding have a right to appeal this Decision and Judgment Order. The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to superseding provisions in the Vermont Rules for Environmental Court Proceedings (V.R.E.C.P.) 4(d)(6). Within 10 days of the receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of the Environmental Division of the Vermont Superior Court, together with the applicable filing fee. Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276. An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court. 10 V.S.A. § 8013(d). A party may petition the Supreme Court for a stay under the provisions of the Vermont Rules of Civil Procedure (V.R.C.P.) 62 and V.R.A.P. 8.

A Judgment Order accompanies this Decision. This concludes the current proceedings before this Court in this enforcement action.

Done at Berlin, Vermont this 12th day of October, 2011

_____

Thomas S. Durkin, Environmental Judge